1  Waylon J. Pickett (SBN 248865)
   GROTEFELD, HOFFMAN, SCHLEITER,
2  GORDON, OCHOA & EVINGER, LLP
3  3718 SW Condor Ave., Suite 100
   Portland, OR  97239
4  Phone:  (503) 384-2772
   wpickett@ghlaw-llp.com
5
6  Attorneys for Plaintiffs,
   STATE FARM GENERAL INSURANCE COMPANY, and
7  STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

12 STATE FARM GENERAL INSURANCE          Case No. 1:15-CV-00421-DAD-JLT
   COMPANY, et al.,
13                                       **PLAINTIFF'S DISCLOSURE OF**
                          Plaintiff,     **EXPERT WITNESSES**
14                                       Fed. R. Civ. P. 26(1)(2)
15            vs.

16 ABC FULFILLMENT SERVICES, LLC, et
   al.,
17
                          Defendant.
18

19 ──────────────────────────────

20 AND RELATED CROSS-CLAIMS.

21

22        Plaintiff, State Farm General Insurance Company ("State Farm") discloses the following

23 persons that it may use to present evidence at trial.  This disclosure is made pursuant to Fed. R. Civ. P.

24 26(a)(2), and the Court's Scheduling Order of December 4, 2015:

25        1.       Phil Van Herle, P.E., 4xForensics, 5262 Ocenaus Drive, Huntington Beach, CA

26 92649.  A copy of Mr. Van Herle's report is attached as Exhibit A.  Mr. Van Herle's CV is attached as

27 Exhibit B, and his fee schedule is attached as Exhibit C.

28 ///

1    2.    Jim Stemler, CFI, Stemler Fire Investigations, 8912 Gleeson Court, Post Office Box

2   2292, Clovis, CA 93613.  A copy of Mr. Stemler's report is attached as Exhibit D, his CV is attached

3   as Exhibit E, and his hourly rate is $275 per hour.

4        DATED:  July 29, 2016

5                                           GROTEFELD, HOFFMAN, SCHLEITER,
                                           GORDON, OCHOA & EVINGER, LLP

6

7                                              /s/ Waylon J. Pickett
                                           Waylon J. Pickett
8                                           Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# 4xForensic
### ENGINEERING LABORATORIES, INC.

**LABORATORY NUMBER: 120511**

**ENGINEERING ANALYSIS REQUESTED BY:**

**Dan Becker**
**State Farm Insurance**
**1 Baxter Way. Suite 200**
**Thousand Oaks, CA 91362**

**Claim Number: 55-189M-379**

**Date of Loss: September 14, 2012**

**Reference: Clark Allemand**

**Subject: Lithium Polymer Battery Fire**

5262 Oceanus Dr., Huntington Beach, CA 92649 • T: 714.450.8500 • F: 714.450.8599
www.4xforensic.com
Claim No.: 55-189M-379

I

EXHIBIT A

**4xForensic**
ENGINEERING LABORATORIES, INC.

November 26, 2012

Laboratory Number: 120511

Reference: Clark Allemand

Date of Loss: September 14, 2012

## ENGINEERING ANALYSIS

### INTRODUCTION

On September 25, 2012 an investigation was initiated in regards to a lithium polymer battery fire that occurred at the Allemand residence on September 14, 2012. During the course of this investigation, the scene photos and an Origin & Cause Report by Investigator Stemler were reviewed and the evidence was examined in the 4x Forensic Laboratories. The purpose of this investigation was to determine the cause of the fire.

### EXAMINATION

A pile of melted plastic, incasing the remains of a fire-damaged shop vacuum motor and lithium polymer battery charger, is shown in Figures 1 and 2. Examination of the shop vacuum motor revealed that the motor winding was intact and that the motor appeared to be damaged from an exterior source of heat, as shown in Figure 3. An X-ray was taken of the melted plastic, as shown in Figure 4, and a lithium polymer battery charger and battery were discovered. As reported in the Origin & Cause Report, Mr. Allemand identified the charger as a Thunder Power RC brand, model TP820CD lithium polymer battery charger.

5262 Oceanus Dr., Huntington Beach, CA 92649 • T: 714.450.8500 • F: 714.450.8599
www.4xforensic.com
Claim No.: 55-189M-379

2

EXHIBIT A

Mr. Allemand stated that the charger was sitting on top of the shop vacuum and in use at the time of the fire. Mr. Allemand also identified that he had purchased the charger from www.thunderpowerrc.com; however, he could not recall when the charger was purchased.

Two fire-damaged lithium polymer batteries are shown in Figure 5. Mr. Allemand identified the battery that he was charging at the time of the fire as a Turnigy brand, 5 cell, 4000mAh lithium polymer battery with a 30C discharge rate. The subject battery was reportedly purchased from www.hobbyking.com and was 9 months old. Examination of the batteries depicted in Figure 5 revealed mostly external damage, indicating that neither of these batteries were the cause of the fire. However, it was found that these batteries matched the approximate size and capacity of the alleged subject battery. The battery found in the melt was observed to be flared out from the center, as shown in Figure 6, and was determined to most likely be the subject battery pack.

A fire-damaged 12 Volt power supply unit is shown in Figures 7 and 8. The power supply was identified as an Acopian brand unit, model no.: W12MT45. The power supply was reportedly purchased from www.acopian.com and was 3-5 years old. No distinct indications of failure were observed in the power supply.

### ANALYSIS

Based on the examination of the fire scene images, fire Origin & Cause Report and the subject evidence, it was determined that the fire was the result of a failure within a defective lithium polymer battery cell. Research of the

battery pack and charger revealed that the charger current and voltage are consistent with the battery pack specifications. Manufacturing defects with such cells typically consist of ingress of conductive material or damage to the cell layers during the manufacturing process. It appears that the Thunder Power RC battery charger does have a balancer circuit, cell voltage sensing system and therefore should not have overcharged any given battery cell. It is not currently known whether the charger will charge without balancer circuits connected. The charger does not, however, come standard equipped with a temperature sensing device connection.

Due to the hazard of lithium polymer batteries and their tendency to combust when overcharged or defective, there is several safety devices recommended for use with these batteries. Adequate design for safety would indicate the need to use over-temperature sensing devices and similar control logic within the battery pack and charger. The Turnigy battery pack was equipped with individual cell voltage level sensing connections. Such connections are typically referred to as balancer connections. Balancers are an added safety device that can maintain the voltage evenly across individual cells so that individual cells are not exposed to failure inducing overvoltage. In this instance the balancer circuit was reported to have been used.

The battery cells were not equipped with temperature sensing devices. More specifically, the cells are not equipped with Positive Temperature Coefficient devices, otherwise known as PTC devices. A PTC device raises the resistance with temperature thus limiting the current applied to a cell in the event

**4xForensic**
ENGINEERING LABORATORIES, INC.

that it is overheating and beginning to fail.  There are also temperature sensing devices in which the charger can deactivate the charging process if it senses an elevated or dangerous temperature on the battery pack; however, neither the charger or battery pack were equipped with such a device. Any or all of the above temperature sensing devices would have likely prevented the overheating and ignition of a cell.

The Consumer Product Safety Commission (CPSC) is in support of the above design safety standards.  In a letter dated February 28, 2008 to ASTM in regards to the fire hazards associated with rechargeable batteries, the CPSC cites design safety features that should be incorporated into battery and charging systems.  An excerpt from this letter by Douglas A. Lee of the CPSC is shown below:

> During the past several months, CPSC staff has seen an increase in the number of incidents with rechargeable high energy density batteries used in toys.  Incidents have included overheating, venting, smoking, explosion, and ignition of battery packs.  Toys that have been involved in incidents have been powered by nickel metal hydride, lithium-ion, and lithium polymer battery packs; and some did not have any integral protection against overcharging, short circuiting, or overheating.  The toys also included chargers that do not have charge control circuitry to protect against overcharging.  Protection circuitry incorporated into both the battery pack and charger is essential to provide a robust system to prevent short circuits, overcharging, and overheating that can result in battery venting, fire, and explosion.

Based upon the above issues with the lithium polymer charging process and despite any potential internal defects with themselves, the battery packs appear to be defective by design in that they were not equipped with current limiting or temperature limiting devices.  Prior testing of such cells does indicate that the cells will show a marked increase in temperature when overcharged prior to any hazardous temperatures occurring.  Based on these findings, it appears highly likely that current limiting and/or temperature limiting sensors in the

5262 Oceanus Dr., Huntington Beach, CA 92649 • T: 714.450.8500 • F: 714.450.8599
www.4xforensic.com
Claim No.: 55-189M-379

5

EXHIBIT A

charging process would have greatly limited the fire hazard with the subject battery pack. To this end, the battery pack design is defective. Similarly, the Thunder Power RC charger does not come pre-equipped with a temperature sensing probe and therefore does not account for the foreseeable risk of thermal runaway of a cell during charging. The system does not incorporate a lockout algorithm wherein the lack of a connected temperature sensor prevents charging of the battery pack. To this end, and consistent with CPSC's recommendation, the battery charger also appears be defective by design.

Over the past several years, the writer of this report has observed several similar lithium polymer battery fires. The charging process of lithium polymer battery cells appears to be highly fire hazardous. The industry has not yet appeared to provide formal safe charging requirements which are reasonably sufficient for a layperson to follow. There is no well-established fire protection charging housings available on the market at this point in time. Based upon a lack of such safety equipment, the charger and battery manufacturers should utilize failsafe designs to prevent such fire hazards.

5262 Oceanus Dr., Huntington Beach, CA 92649 • T: 714.450.8500 • F: 714.450.8599
www.4xforensic.com
Claim No.: 55-189M-379

6

EXHIBIT A

## CONCLUSIONS

The totality of physical evidence indicates that the fire was the result of a failure within the lithium polymer battery that was being charged. Both the Turnigy battery pack and Thunder Power RC charger were found to be defective in design in that neither contained any over-current or over-temperature sensing devices which would have greatly reduced the fire hazard involved in charging lithium polymer batteries. Furthermore, such safety devices would have likely prevented this fire from occurring. To this end, it appears that both the Turnigy battery pack and Thunder Power RC charger are defective by design.

Respectfully submitted,

Phil Van Herle
Professional Engineer
California No. M31321

Reviewed by:

Bruce Agle
Professional Engineer
California No. MT1862

**4xForensic**
ENGINEERING LABORATORIES, INC.



Figure 1





Figure 2

**4xForensic**
ENGINEERING LABORATORIES, INC.



Figure 3



Figure 4

5262 Oceanus Dr., Huntington Beach, CA 92649 • T: 714.450.8500 • F: 714.450.8599
www.4xforensic.com
Claim No.: 55-189M-379

9

EXHIBIT A





Figure 5



Figure 6

EXHIBIT A



Figure 7





Figure 8

EXHIBIT A



# PHIL VAN HERLE, P.E.

## *TECHNICAL AREAS OF SPECIALIZATION:*

• Fire Analysis of Electrical & Gas Appliances,
   Structures, Vehicles & Heavy Equipment
• Accident Reconstruction
• Automotive Systems Analysis
• Mechanical Failure Analysis
• Machine Design

## *EDUCATION:*

•Bachelor of Science in Mechanical Engineering
California State University, Northridge (1994)

## *REGISTRATION:*

•Professional Engineer License, California No. M31321
•California Conference of Arson Investigators Certificate of Training
in Advanced Fire & Arson Investigation, July 2003

## *PROFESSIONAL EXPERIENCE:*

**Managing Engineer, 4x Forensic Engineering Laboratories, Inc.** (December 2010 to
present).  Fire analysis of electrical & gas appliances, structures, vehicles & heavy
equipment; automotive systems analysis, automotive accident reconstruction, mechanical
failure analysis, machine design.

**Staff Engineer, Vollmer-Gray Engineering Laboratories, Inc.** (August 2000 to
December 2010).  Fire analysis of electrical & gas appliances, structures, vehicles &
heavy equipment; automotive systems analysis, automotive accident reconstruction,
mechanical failure analysis, machine design.

**Mechanical Engineer, Parsons Infrastructure and Technology** (March 2000 to
August 2000).  Design of materials handling and HVAC systems for chemical munitions
plant.

**Automotive/Mechatronics Engineer, AURA Systems** (December 1996 to March 2000).
Managed projects to develop electromagnetic valve actuators; analysis and design of
sliding shafts, springs, sealed gas spring designs, latched and spring-mass-damper-
electromagnet systems; electromagnetic design; electrical power system design; engine



testing; designed and built engine dynamometer for engine horsepower tests; designed cast aluminum valve covers; developed variable valve timing maps; conducted research for improved electromagnetic materials.  Used motion and stress analysis software programs to optimize mechanical designs.  Conducted research and design for a natural gas/gasoline powered vehicle having an electromagnetically actuated valve train for the Southern California Gas Company.

**Contracted Projects,** (February 1999 to present).  Consulting engineer on the design for a portable water filtration device and a proprietary exercise machine; investigation of Variable Valve Timing (VVT) technologies; development of a high speed load controlling microcontroller for a Dynojet motorcycle chassis dynamometer, development of an after injection diesel fuel injection control system for Ceryx, Inc.

**Consulting Engineer, Warner Brothers Showworks** (June 2001 to September 2001).  Design of mechanical special effects machinery and mechanisms for a theme park stunt show.  Show was to be opened summer of 2002.

**Consulting Engineer, EasyRiders magazine** (March 1998 to June 1999).  Design of a microcontroller for a simulated quarter-mile motorcycle-dynamometer drag race machine. Conducted power supply and controls design for an Eddy-Current dynamometer brake. Lighting display controls and relay circuit design.

**Student Intern, GM-Hughes Electric-Vehicle Project** (June 1992 to August 1992).  Built and tested prototype components, including the design and fabrication of prototype electronics housings, environmental chamber testing of electronics, thermal analysis of charger amplifier electronics, and the design of a testing mechanism and test from which to determine wear resistance of the inductive charging paddle used to charge the EV-1 electric car.

*PROFESSIONAL AFFILIATIONS:*

Tau Beta Pi, Engineering Honors Society
National Society of Professional Engineers
Society of Automotive Engineers
American Society of Mechanical Engineers
California Conference of Arson Investigators
American Society for Testing and Materials (ASTM) member of
        Forensic Engineering Committee
NFPA



**RESEARCH & TESTING for CPSC RECALLS:**

July 10, 2002/Release # 01-189:  Consolidated Industries Inc. furnaces recalled due to fire hazard.
September 25, 2003/ Release # 03-195: A&T Fuji Power lithium-ion batteries recalled for fire hazard.
January 23, 2004/Release # 04-068: Kyocera Wireless Corp. recalls lithium-ion batteries due to fire hazard.
June 10, 2004/Release # 04-157: Recall of SMC brand oscillating fans due to fire hazard.
June 8, 2005/Release #05-187: Mintek Digital Inc. portable DVD player lithium-ion batteries recalled due to fire hazard.
November 9, 2005/ Release #06-025: Thane International recalls Perfect Air Ultra air purifiers due to fire hazard.

**PRESENTATIONS:**
**"Engineering Aspects of Fire Investigation",** Orange County Public Defenders Office, February 6, 2003, Santa Ana, CA.
**"Fire Analysis and Product Testing",** Long Beach Fire and Arson Department, July 9, 2003, Long Beach, CA.
**"How to Conduct a Consumer Product Recall Investigation",** California Conference of Arson Investigators, Gold Coast Chapter Roundtable Meeting, November 18, 2004.
**"Electrical and Gas Appliance Fire Analysis & Testing",**  Fire Investigation 1B training course for Riverside County Fire Department Investigators training program , October 22, 2008.
**"Clothes Dryer Fires Analysis and Testing",** California Conference of Arson Investigators, Inland Chapter Roundtable Meeting, August 16, 2012.
**"Large scale computerized fire modeling and burn testing",** Ventura County Fire Department, Fire investigation training unit, March 5, 2013.
**"Large Scale Fire Model Validation and Methods of Scene Documentation for Fire Modeling",** California Conference of Arson Investigators, Training Seminar, March 26, 2013.
"**Computer simulation and laboratory testing methods for use in fire and water loss engineering investigations",** Combined Claims Conference, March 4, 2014.
**"Using advanced engineering tools in the determination of a fire origin and cause – a case study",** NASP Southern California Chapter Seminar, March 14, 2014.
**"Ford cruise control deactivation switch and arson vehicle burn testing",** Ventura County Fire Department,  Fire investigation training unit, January 22, 2016.

**PATENTS (Personally Invented, Authored and Processed):**
U.S. Patent No. 5,836,859 "Full Body Exercise Machine"
U.S. Patent No. 6,261,447 "Portable Automatic, Steam Pressurized Water Filtration System"



**FEE SCHEDULE**

| | CONSULTING<br>(per hour) | DEPOSITION AND<br>TESTIMONY<br>(2-hour minimum) |
|---|---|---|
| Bruce J. Agle | $275.00 | $375.00 |
| Philippe J. Van Herle | $275.00 | $375.00 |
| Jeffrey W. Barnes | $250.00 | $350.00 |
| Luke Johnson | $200.00 | $300.00 |
| Mileage | | $.65 per mile |
| Color copies | | $1.00 per page |

NOTE: All time is charged portal-to-portal from Huntington Beach, California.  There is a 2-hour minimum for group inspections, deposition, arbitration and trial testimony.  Compensation for services performed will not be contingent upon the necessity of client to receive payment from other parties.  All items stored are subject to a storage fee.

Effective Date:
9/12/2014

# STEMLER FIRE
## INVESTIGATIONS

**PI # 23548**

# State Farm Insurance Company
## Claim #55-189M-379

**Incident Address:**
Clark Allemand
8912 Gleeson Court
Bakersfield, CA 93311

DOL:  September 14, 2012

**Prepared for:  Mike Avery**

**September 24, 2012**

**By: Stemler Fire Investigations**
**File #12-0918**

PO Box 2292 Clovis CA  93613          (559) 307-7890          FAX (559) 324-1046

EXHIBIT D

**Stemler Fire Investigations**  **September 24, 2012**
**Claim #55-189M-379**  **Page 1 of 11**

## SUMMARY of DETERMINATIONS:

This report contains my findings and conclusions of the fire I investigated on September 19, 2012, at 8912 Gleeson Court, Bakersfield, CA. I have determined that the fire started in the northeast corner of the garage. The **most possible** cause of the fire *(Reference, NFPA 921, 4.5)* was some type of electrical failure or malfunction within one of the electrical components in the area. The fire damage inside the garage was consistent with the fire originating from the area where some lithium battery packs were being charged. The insured told me he was charging the battery packs prior to the fire being discovered. The insured is an electrical engineer and he believes the fire was caused by the lithium batteries which have a propensity to overheat and fail. An examination of the components by an electrical engineer may be able to determine if the fire was in fact caused by some type of electrical overheating.

## ASSIGNMENT:

On Tuesday, September 18, 2012, State Farm Claim Representative Mike Avery contacted me in regards to claim #55-189M-379. Mr. Avery requested me to conduct an origin & cause fire investigation of a fire that occurred to the home located at the above address. I completed my scene investigation on September 19, 2012.

## PROPERTY DESCRIPTION:

A compass reading taken at the front of the property indicated that the house faced predominately south. The home is located on the north side of the street and is a single story home with three bedrooms, two bathrooms and an attached two car garage. The exterior walls are constructed of wood and are covered with wood and stucco siding. The roof is covered by composition shingles. The home sits on a cement slab foundation and the interior floors are covered with combinations of tile and carpet. The residence was provided with one smoke detector which was located in the hallway. According to the insured, the smoke detector did not go off prior to the fire being discovered.

EXHIBIT D

## WEATHER:

The *weatherunderground.com* website reported that the temperature on September 14, 2012, at 5:53 p.m. was 100.9 degrees Fahrenheit. The humidity was at 17% and the winds were out of the north/northwest at 12.7 miles per hour. The skies were clear. The fire originated from the interior of the garage so the weather had no direct effect on the origin and cause of the fire *(Reference, NFPA 921, 17.3.3.5)*.

## UTILITIES:

Electrical service to the home was provided through an underground service lateral located on the west side of the home. The power to the structure was "on" and in service at the time of the fire. I examined the electrical panel attached to the exterior west wall of the home. The main electrical panel provided over-current protection to the electrical circuitry within the residence. Over-current protection in the main panel was provided in the form of breakers. One 20 ampere breaker, labeled "Freezer", appeared to be in the tripped position. The panel had not sustained fire or heat damage and I found no indicators of failure or arcing inside the panel.

The natural gas was "on" and in service at the time of the fire. The gas meter was located on the west side of the home and it had not sustained any fire damage.

## STATEMENTS:

**Clark Allemand- Insured**                                         **(661) 303-7718**

I met with Mr. Allemand at the fire scene on September 19, 2012 to talk to him about the fire. He gave me verbal consent to enter the property and conduct an origin and cause fire investigation. Mr. Allemand also gave me verbal consent to collect and remove any pieces of evidence that would assist me in my investigation. **Mr. Allemand told me the following:** We have lived here for twenty-five years and we've never had any electrical problems or major repairs in the home. I am an electrical engineer so I watch out for electrical problems all the time. I was inside the garage not even fifteen minutes

EXHIBIT D

before the fire happened and everything was fine. I had plugged in a lithium battery pack for my remote control helicopter. There was an inverter to take the power down from 120 volts A/C to 12 volts D/C. The inverter was plugged into a power strip which was plugged into the east wall outlet (by the workbench). Nothing else was plugged into the power strip. The charger for the batteries was a 12 volt D/C charger and it had an inline fuse. The lithium battery packs were plugged into the battery charger. I was keeping a close eye on the battery packs because I know they can overheat and cause fires. The batteries were starting to "power down" when I last checked on them about fifteen minutes before the fire. The batteries had been charging for about forty-five minutes at that point. The battery charger, the inverter, and the battery packs were sitting on top of a Shop Vac which was located near the east wall of the garage.

About fifteen minutes after the last time I was in the garage I started to see smoke inside the garage. I opened the door from the house into the garage but all I could see was smoke everywhere. I went around to the east side door for the garage and opened it. I didn't see any fire at first because the smoke was too thick. It was about that time that the big garage door collapsed into the interior of the garage. Then the fire got real big.

The air compressor was plugged into the north wall outlet but the air compressor was not on. I only turn it on when I need it. The only other two things plugged in were the sprinkler controls (southeast corner) and the yard lights (southwest corner). I also had a lot of electronics stored out here. There were several old battery chargers, inverters, a printer and more lithium battery packs. Most of that old stuff was stored in the area of the Shop Vac which is also where all the charging equipment I was using was located.

There was also five gallons of model airplane fuel in the northeast corner of the garage. There are four 1 gallon bottles in a case and I had one extra sitting on top of that case. The fuel is 30% Nitro Methane so it burns pretty hot. There were also a bunch of cardboard boxes stored in the northeast corner. Between the fuel and the boxes there was a large fuel load in that area.

EXHIBIT D

The five cell lithium batteries were connected in series. The battery packs were about nine months old and they were Turnigy 30c battery packs. I bought them off of the hobbyking.com website. I think they are made in Taiwan but are assembled in America. The batteries were in trays to keep them together. The battery charger could only charge eight cells at a time so I only charged one pack at a time.

I never had any troubles with the water heater inside the garage. There were only two circuits for the garage. One was for the freezer and the other circuit was for the lights and outlets. The car had been parked inside the garage for over an hour before the fire was discovered. The walls of the garage were covered by sheet rock but the ceiling wasn't.

**Investigator Vic Mabry- Bakersfield Fire Department**          **(661) 326-3690**

I phoned Investigator Mabry on September 19, 2012, to talk to him about the fire. He had conducted an origin and cause fire investigation after the fire had been extinguished. **Investigator Mabry told me the following:** The fire originated inside the garage. The homeowner told me he was charging some lithium batteries in the northeast corner of the garage. He said that the fire was isolated to the area where the batteries were being charged when he first saw it. I determined the fire was caused by some type of electrical heat source but I couldn't tell if it was the batteries, the charger, or something else in the area. I listed the cause of the fire as an accidental electrical fire.

## EXTERIOR EXAMINATION:

The fire patterns on the exterior of the home showed that the greatest amount of fire damage was located around the doors of the garage. The fire damage around the doors was much heavier on the interior side of the openings indicating the fire came from the interior of the garage. The roof above the garage was completely destroyed and collapsed during the fire. The fire damage to the roof above the rest of the home became progressively less severe as the fire travelled away from the garage area. There were no fire patterns that were consistent with the fire originating from the exterior of the home.

## INTERIOR EXAMINATION:

The living quarters of the home had sustained minor smoke damage throughout. The fire damage caused by direct flame contact in the home was mostly limited to the garage which was located on the southeast corner of the home. The living quarters was eliminated as a possible area of origin due to the lack of fire damage.

The interior of the garage had sustained heavy fire damage throughout. The roof above the garage was destroyed in the fire and had collapsed. The walls were still intact although most of the sheetrock had been pulled down during fire suppression. The 2007 Lexus ES350 that was parked in the west stall of the garage was destroyed in the fire. The fire damage on the car was consistent with it being exposed to a fire coming from another area of the garage. The driver side (faced to the west) of the vehicle had sustained less fire damage than the passenger side.

The workbench located along the east wall of the garage was still mostly intact. There was a directional burn pattern (created as fire travels from one area to another) across the workbench. The burn pattern indicated the fire came from the north end of the garage. The wall outlet and the light switch located on the east wall, just north of the workbench, were heavily damaged in the fire. A power strip had been plugged into the wall outlet prior to the fire. The power strip was not recovered in the fire debris. The fire damage on the east wall and on the workbench was not consistent with the fire originating from the area where the power strip or the wall outlet were located.

There was a directional burn pattern located across the contents along the north wall of the garage. The pattern extended across the shelving unit and the air compressor located along the north wall. The burn pattern indicated the fire originated from the east side of the garage. The air compressor was plugged in during the fire but the unit was in the off position per the insured. The wall outlet for the air compressor was destroyed in the fire but the conductors that supplied power to it were still intact and had no signs of arc damage.

EXHIBIT D

The northeast corner of the garage had sustained the heaviest fire damage in the garage. In this area was five gallons of model airplane fuel (30% Nitro Methane) and a large volume of cardboard boxes. The northeast corner is also where the lithium batteries were being charged prior to the fire. The fire debris was removed and several battery chargers and other various electrical components were uncovered. Mr. Allemand, an electrical engineer and radio control helicopter enthusiast, identified the various pieces of equipment in the fire debris. Most of the items had simply been stored in the area prior to the fire. Mr. Allemand identified the melted Shop Vac in the fire debris. The battery charger, the inverter and the lithium battery packs were sitting on top of the Shop Vac while the batteries were being charged. The Shop Vac had melted to the floor during the fire and numerous items were encased in the melted plastic. The partial remains of the lithium battery packs and the inverter were visible in the debris. The melted material was collected as evidence #1.

The battery charger that was being used prior to the fire was found in the fire debris. The charger was found just south of the Shop Vac fire debris. The battery charger was labeled as evidence #2. Two lithium battery packs were also found in the fire debris. Mr. Allemand could not confirm the battery packs were the same ones being charged at the time of the fire because he had several battery packs stored on a shelf in the same area. The battery packs were collected and marked as evidence #3. No other ignition sources were found in the northeast corner of the garage.

## Potential Competent Ignition Sources within the Area of Fire Origin:

I examined the area of fire origin (the northeast corner of the garage) and determined there was only one type of ignition source capable of causing a fire to be present. The only credible ignition source known to be in the area of origin was some type of electrical overheating. The nature of the electrical overheating, or the item that overheated, was not confirmed in my investigation.

**Stemler Fire Investigations**
**Claim #55-189M-379**

**September 24, 2012**
**Page 7 of 11**

## Fire Cause Hypothesis Generation and Testing; Process of Elimination:

The determination of the area of fire origin and the elimination of competent ignition sources in this area limits and qualifies the potential fire cause hypothesis that can be proposed. **The hypothesis states:** This fire was caused by some type of electrical failure or malfunction in one of the components in the northeast corner of the garage. Had an electrical failure or malfunction occurred in one of the components it could have produced enough external heat to ignite the combustible material (papers, plastic, boxes, etc.) around it. The directional fire patterns inside the garage are all consistent with the fire originating from the area where the lithium batteries were being charged. The insured was in the process of charging the lithium batteries prior to the fire being discovered. No other equipment was in operation at the time of the fire.

The components from the area of origin were collected as evidence so that they can be evaluated by an electrical engineer. An examination by an electrical engineer may be able to determine the exact nature of the electrical failure or malfunction. There were no other ignition sources in the area of origin.

## CONCLUSIONS:

It is my opinion that the most possible cause of this fire was some type of electrical overheating. I have determined that the information and fire data present are consistent with the fire originating from the northeast corner of the garage which is where Mr. Allemand was charging the lithium batteries. The directional fire patterns inside the garage are consistent with the fire originating from the area where the batteries were being charged.

My examination of the scene, and more specifically the area of fire origin, revealed that there were no other competent ignition sources present in this area. Therefore, it is reasonable and plausible to conclude the fire was most possibly caused by some type of electrical overheating. An examination of the electrical components by an electrical engineer, with all interested parties in attendance, may be able to determine if

EXHIBIT D

the fire was in fact caused by some type of electrical overheating. At that time, I will reevaluate my conclusion based on the new information provided by the engineer's report. Listed below are some of the facts and fire patterns I considered in reaching my conclusion:

- There were no fire patterns that indicated the fire had originated from the exterior of the home.
- I found no fire patterns that indicated the fire originated from any other area of the garage.
- No one had burned any candles or smoked inside the garage on the day of the fire.
- Mr. Allemand did not have any chemicals or oily rags inside the garage which could lead to spontaneous combustion.
- The fire damage inside the garage, and Mr. Allemand's description of the fire, was consistent with the fire originating from near floor level. There were no indications the fire started in the rafter area above the garage.
- The fire damage on the east wall and on the workbench was not consistent with the fire originating from the area where the power strip or the wall outlet were located.
- A "V" shaped burn pattern (created as fire travels up and away from an area of origin) was visible across the interior east and north walls of the garage. The fire pattern indicated the fire had come from the area of the Shop Vac which is where the lithium batteries were being charged.

  Reference:     **NFPA 921, 2011 edition**
                 6.3.2.1; 6.3.7.1; 6.3.7.3 to 6.3.7.5;
                 **Kirk's Fire Investigation, 7th edition**
                 "V Patterns"                    pp. 259-263
- The lithium batteries had been charging for approximately 45 minutes prior to the fire being discovered.

EXHIBIT D

- Heat shadowing on the contents indicated the fire came from the northeast corner of the garage.

> Reference:   **NFPA 921, 2011 edition**
>
>     "Heat Shadowing"          p. 6.3.4

- The directional burn patterns (created as fire travels from one area to another) were visible across the north and east contents of the garage. The fire pattern indicated the fire had come from the area where the lithium batteries were being charged.

> Reference:   **NFPA 921, 2011 edition**
>
>     "Movement and Arrow Patterns"
>
>             p.6.3.2.1; 6.3.7.6; 6.4.1.1; 7.4.1.5
>
>     **Kirk's Fire Investigation, 7th edition**
>
>     Burn Patterns          pp. 258-278

- The fire patterns decreased in severity as the fire moved away from the northeast corner of the garage.

> Reference:   **NFPA 921, 2011 edition**
>
>     Chapter 6 "Fire Patterns"       6.1 – 6.4.1.3
>
>     **Kirk's Fire Investigation, 7th edition**
>
>     "Tracing the Course of the Fire"    pp. 250-252, 257-258

- There were no other ignition sources found near the area of origin.

## EVIDENCE:

With the consent of the Insured the electrical components were collected as evidence. **Evidence #1** is the remains of the Shop Vac which has several other electrical components (lithium battery packs, inverter, etc.) melted to it. **Evidence #2** is the battery charger that was being used to charge the batteries. **Evidence #3** is the remains of two lithium battery packs that may have been involved in the fire. On September 23, 2012, State Farm representative Donna Fennel instructed me to send the evidence to 4X Forensics in Huntington Beach, CA. The evidence was shipped on September 24, 2012.

EXHIBIT D

**Stemler Fire Investigations**                              **September 24, 2012**
**Claim #55-189M-379**                                        **Page 10 of 11**

One hundred sixty-four digital photos were taken of the fire scene. The memory card was removed from the camera and the photos transferred to a photo disc. The disc is in my case file under this claim number. Eighteen photos were used in this report and are attached as a photo log.

## DISPOSITION:

The house located east of the Allemand residence, 8908 Gleeson Court, was burned in the fire. The west side of the home and the attic above the garage were burned when the fire from the Allemand home spread to their house. Other than the wood fence, there was nothing to assist the fire spread from one home to the other.

The remaining fire scene data and information supports the conclusions and inferences I have made regarding the fire origin and cause issues. This investigative report presents my opinions based on the data and the informational evidence I observed at the scene and/or such provided by the interviewees. If further information or evidence is made available to me, I will gladly evaluate its potential bearing on my present findings. Unless you decide to expand my investigation, I will close the case at this time.

## ATTACHMENTS:

-Photo Log
-Floor plan diagram
-Evidence log
-Bakersfield Fire Department Incident Report

## ADDITIONAL INFORMATION:

**Batteries**

Bought 9 months ago from **hobbyking.com**          4000ma, 5s, 30c
Turnigy Lithium Battery Packs 30c                   SKU: T4000.5s.3c

EXHIBIT D

**Stemler Fire Investigations**
**Claim #55-189M-379**

**September 24, 2012**
**Page 11 of 11**

### Acopian Inverter Gold Box

**Acopian.com**  M/N W12mT45

120 volt A/C to 12 volt D/C

45 amperes; 3-5 years old

### Battery Charger

**Thunderpowerrc.com** TP820CD

12 volt D/C charger with an inline fuse

---

X _____

Jim Stemler, CFI
Stemler Fire Investigations

P.O. Box 2292, Clovis, CA 93613          Cell (559) 307-7890          Fax (559) 324-1046

EXHIBIT D

# Stemler Fire Investigations

## 8912 Gleeson Court, Bakersfield, CA

### Claim #55-189M-379



↑ N

E = Electrical Service Meter & Panel

G = Natural Gas Meter

⊕ = Water Heater

Drawing is not to scale
but for graphic purposes only.

Drawn by J. Stemler

EXHIBIT D

# Stemler Fire Investigations

## 8912 Gleeson Court, Bakersfield, CA
## Garage Close-up
## Claim #55-189M-379

↑
**N**



= Water Heater

*E* = Evidence Items #1, #2 & #3,
collected in the area of the
Shop-Vac above.

Drawing is not to scale
but for graphic purposes only.

Drawn by J. Stemler

EXHIBIT D

# JAMES M. STEMLER, C.F.I.

P.O. Box 2292, Clovis, Ca. 93613    Cell (559) 307-7890
P.I. #23548        firestem@aol.com    Fax (559) 324-1046

## Experience

| | | |
|---|---|---|
| Stemler Fire Investigations | Fire Investigator | 2003 - Pres |
| Clovis Fire Department | Captain | 2000 - Pres |
| F.C.C. Fire Academy | Adjunct Instructor | 1999 - Pres |
| Clovis Fire Department | Apparatus Engineer | 1995 - 2000 |
| Clovis Fire Department | Fire Investigator | 1990 - Pres |
| Clovis Fire Department | Fire Fighter | 1989 - 1995 |
| City of Fresno, Airport | Public Safety Officer | 1988 - 1989 |
| U.S. Air Force | Fire Fighter | 1983 - 1987 |

## Certifications

| | | | |
|---|---|---|---|
| IAAI Certified Fire Investigator | 2012 | Fire Officer | 1994 |
| CCAI Certified Fire Investigator | 2005 | Fire Fighter II | 1994 |
| Fire Investigator II | 2005 | Fire Fighter I | 1987 |
| Fire Investigator I | 1991 | | |

## Education

| | | |
|---|---|---|
| Fresno City College | A.S. Fire Science | 1998 |

## Published Writings

| | | |
|---|---|---|
| Department in Focus; Clovis Fire | CFFA Magazine | 1998 |
| The Female Juvenile Fire Setter | CCAI Magazine | 1994 |

EXHIBIT E

## Lectures

| | | |
|---|---|---|
| Clovis Fire Investigation Team | Fire Investigation | Ongoing |
| Center for Advanced Research & Technology | | Annually |
| Central Valley Arson Investigators | Case Reviews | Ongoing |
| Merced City Fire Dept. | Fire Investigation | 1/15/2013 |
| Merced CCAI Roundtable | Fire Investigation | 9/17/2012 |
| Clovis Emergency Response Team | Case Reviews | July 2010 |
| Western States Auto Theft Inv. | Vehicle Fire Inv. | 8/2/2006 |

## Professional Memberships

| | |
|---|---|
| I.A.A.F | International Association of Arson Investigators: CFI |
| C.C.A.I. | California Conference of Arson Investigators: CFI |
| C.V.A.I. | Central Valley Arson Investigators: Two Time Past President |
| C.P.F. | California Professional Firefighters |
| I.A.F.F. | International Association of Fire Fighters |

## Awards

| | |
|---|---|
| Central Valley Safety Society Fire Fighter of the Year | 2006 |
| Clovis Fire Department Fire Fighter of the Year | 1997 |

EXHIBIT E

# <u>Training Highlights</u>

I have completed over one thousand hours of training in professional conferences and specialized fire investigation. I have participated/instructed in setting over two hundred fifty fires, in structures and automobiles, to study and document the fire behavior and burn patterns. I have been a guest lecturer and conducted case reviews for several investigation organizations. I have attended over twenty-five CCAI conferences and classes which were tested and covered numerous specialized topics. Some of the **other tested** training I have completed beyond the high school level includes:

| | |
|---|---|
| HAZWOPER Standard | 4 hours |
| Understanding Fire; Candle | 4 hours |
| Process of Elimination | 3 hours |
| Charleston Fire (Fire Modeling) | 4 hours |
| Post Flashover Fires | 4 hours |
| Residential Electrical Systems | 4 hours |
| NFPA 1033 & Your Career | 2 hours |
| Residential Building Construction | 3 hours |
| Arc Mapping Basics | 4 hours |
| Basic Electricity | 4 hours |
| Investigation & Testimony | 3 hours |
| Scientific Investigation Method | 3 hours |
| Wildland Fire Investigation | 5 hours |
| Hazardous Materials Operational | 32 hours |
| Electrical Fire Investigation | 40 hours |
| Interview Techniques | 40 hours |
| Fire Prevention   1A & 1B | 80 hours |
| Fire Investigation 1A & 1B | 80 hours |
| Fire Investigation 2A & 2B | 80 hours |

# Testimony Experience; Previous 5 Years

| | |
|---|---|
| Farmers v. Irving | Deposition |
| Claim #1019123729 | 5-7-2015 |
| | |
| State Farm v. Caetano | Superior Court, Kings County |
| Claim #55-E109-316 | March 2015 |
| | |
| State Farm v. Caetano | Deposition |
| Claim #55-E109-316 | 2-18-2015 |
| | |
| State Farm v. Hart | Superior Court, Deposition |
| Case #13CECG01681 | 1/8/2015 |
| | |
| Caetano v. State Farm | Deposition |
| Claim #55-E109-316 | 8/5/2014 |
| | |
| K. Nelson v. State of Calif. | Superior Court, Stanislaus Co. |
| Case #512470 | 1/10/2013 |
| | |
| Tamayo v. Babbitt | Superior Court, Taft |
| Case #T-1504-CL-9935 | 8/6/2012 |
| | |
| State Farm v. Ranlin, Inc. | Superior Court; Deposition |
| Case #VCU 246220 | 1/22/2012 |
| | |
| Farmers v. PR Plumbing | Deposition |
| Claim #1010769222 | 4/23/2009 |

EXHIBIT E

**PROOF OF SERVICE**

I, the undersigned, certify and declare as follows:

I am over the age of 18 years, and not a party to this action.  My business address is 3718 SW Condor Ave., Suite 100, Portland, OR  97239.

On the date stated below, I caused to be served in the manner indicated, **Plaintiff's Disclosure of Expert Witnesses**, on the parties involved addressed as follows:

Peter W. Beckman
Attorney at Law
1400 Chester Ave., Suite I
Bakersfield, CA  93301
beckmanlaw@att.net

*Atty for ABC Fulfillment Services, LLC*

Geordan M. Goebel
Attorney at Law
155 Granada St., Suite M-2
Camarillo, CA  93010-7725
ggoebel@goebellaw.com

*Atty for Cathy & Clark Allemand*

Teresa Starinieri
Law Offices of Jamie Skebba
777 South Figueroa St., Suite 1507
Los Angeles, CA  90017
teresa.starinieri@aig.com

*Attys for  Advance Energy, Inc.*

by electronic mail via the ECF system of the United States District Court for the Central District of California.

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  July 29, 2016

Lisa A. Heath, Paralegal